UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Amy Vollmar

    v.                                    Civil No. 17-cv-704-LM
                                              Opinion No. 2019 DNH 133

Atrium Medical Corporation
et al.

In re: Atrium Medical Corp.
C-QUR Mesh Products Liability
Litigation (MDL No. 2753)

O R D E R

Amy Vollmar brings suit against Atrium Medical Corporation ("Atrium"), a medical device company that manufactured and sold C-QUR mesh, and two related companies, Maquet Cardiovascular US Sales, LLC ("Maquet") and Getinge AB ("Getinge"), alleging product liability claims, breach of warranty claims, and violation of consumer protection laws. Vollmar's suit is part of a multi-district litigation ("MDL") proceeding involving claims that C-QUR mesh was, among other things, defective and unreasonably dangerous and caused injury when surgically implanted for hernia repair. Her case was selected in the MDL proceeding for the Initial Discovery Pool, making it a bellwether case. Defendants Atrium and Maquet move to dismiss Vollmar's claims on a variety of grounds.[1] Vollmar objects.

---

[1] Getinge has filed a separate motion to dismiss in the main MDL case contending that the court lacks personal jurisdiction over it. That motion remains pending. Getinge does not join in the instant motion.

## STANDARD OF REVIEW

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## BACKGROUND

On February 19, 2010, Vollmar had a surgical procedure at St. Luke's Hospital in Maumee, Ohio, for an open repair of an umbilical hernia. A C-QUR Mesh V-Patch was used for the repair. Vollmar returned to St. Luke's Hospital in March 2012, because of recurrent umbilical hernia and pain. Through an incision and use of a camera, doctors discovered that part of the previously implanted mesh had come loose, which required reattachment.

Atrium, which designed, marketed, and sold the C-QUR mesh that was implanted into Vollmar, is located in New Hampshire. Maquet is located in New Jersey, and Getinge is a Swedish corporation. Vollmar alleges that Maquet and Getinge are responsible for Atrium's actions and exercised control over Atrium with respect to oversight and compliance with applicable safety standards.

Vollmar alleges, among other things, that defendants designed, manufactured, marketed, and sold C-QUR mesh to be used by surgeons for hernia repair. C-QUR mesh was intended to be permanently implanted for those repairs, and defendants represented that C-QUR mesh was

2

safe and effective for that purpose. Vollmar further alleges that C-QUR mesh was not safe or effective for its intended purpose, that defendants failed to adequately research and test it to determine the risks and benefits of the mesh, and that they failed to warn of risks although they had been notified that the mesh was causing widespread catastrophic complications. Vollmar brings claims for negligence (Count I), strict liability-design defect (Count II), strict liability-manufacturing defect (Count III), strict liability-failure to warn (Count IV), breach of express warranty (Count V), breach of implied warranties of merchantability and fitness of purpose (Count VI), and violation of consumer protection laws (Count VII). She seeks compensatory and enhanced damages.

**DISCUSSION**

Defendants Atrium and Maquet contend that Ohio law governs the liability portion of Vollmar's claims and that her claims fail under the applicable law. They also argue that her breach of warranties claims (Counts V and VI) are time-barred under the applicable statute of limitations. Vollmar objects, arguing that a choice-of-law analysis is premature, that if a choice-of-law analysis were done New Hampshire law would apply, and that her breach of warranties claims are not time-barred.

I. Choice of Law

Defendants contend that Ohio has an interest in the case because Vollmar's alleged injury occurred in Ohio. They further contend that a choice-of-law analysis is necessary because Ohio's product liability law conflicts with New Hampshire's product liability law and that, under New Hampshire's choice-of-law principles, Ohio law governs. Vollmar argues that a choice-of-

3

law analysis is premature because additional factual development is necessary, that defendants have not sufficiently identified an actual conflict, and that if the court engages in a choice-of-law analysis, New Hampshire law governs.

> A.  Timeliness of Choice-of-Law Analysis

Vollmar argues that it is premature for the court to engage in a choice-of-law analysis. She contends that a choice-of-law analysis is "heavily fact dependent" and that because her case involves seven claims which are complex and require discovery, a choice of law cannot be made now. Doc. no. 72 at 4-5. Vollmar states that information about defendants' liability must be obtained through discovery.

In support of her position, Vollmar relies on Knightly v. Gula, No. 16-cv-124-AJ, 2016 WL 4401996 (D.N.H. Aug. 18, 2016) and Rivera v. Body Armor Outlet, LLC, No. 17-cv-512-LM, 2018 WL 1732154 (D.N.H. Apr. 10, 2018). In Knightly, the magistrate judge explained that she could not make a determination on one factor of the choice-of-law standard because the complaint was only five pages long and she lacked sufficient information about which state had the most substantial connection to the case. 2016 WL 4401996, at *1 (internal quotation marks and citation omitted). In Rivera, the court explained that the evidence pertaining to whether the plaintiff agreed to a choice-of-law provision was "sparse and, more importantly unclear," which was the main reason the choice-of-law issue was premature. 2018 WL 1732154, at *1.

Unlike the parties in those cases, Vollmar does not explain what specific information is lacking that is necessary for the choice-of-law analysis that can be obtained only through discovery. Her complaint is thirty-five pages long, and the location of where defendants manufactured the allegedly defective products and where Vollmar had her surgery is not in

4

dispute. Although Vollmar chose to provide little information about her own experiences and injury, that is information known to her. As a result, Vollmar has not shown that the choice-of-law issue defendants raise here is premature.

B. Standard

The parties agree that New Hampshire choice-of-law principles govern the analysis in this bellwether case. See, e.g., Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) (noting that in "determining what state law is relevant, a federal court must apply the choice-of-law framework of the forum state"). "Under New Hampshire choice-of-law principles, when more than one state may have an interest in the suit and the choice involves substantive law, the court must first decide whether relevant New Hampshire law actually conflicts with the laws of the other interested states." SIG Arms Inc. v. Emp'rs Ins. of Wausau, 122 F. Supp. 2d 255, 258–59 (D.N.H. 2000). An actual conflict exists only when application of the laws of an interested state other than the forum would change the outcome. Lambert v. Kysar, 983 F.2d 1110, 1114 (1st Cir. 1993). When no actual conflict is shown, the court will apply the law of the forum state which, in this case, is New Hampshire. Aftokinito Props, Inc. v. Millbrook Ventures, LLC, No. 09-cv-415-JD, 2010 WL 3168295, at *3 (D.N.H. Aug. 9, 2010). The party who asserts that the law of another state is different from the law of the forum state bears the burden of proving the content of the foreign law. SIG Arms, 122 F. Supp. 2d at 259.

C. Analysis

The parties agree that New Hampshire and Ohio are interested states. Defendants contend that the product liability laws in New Hampshire and Ohio conflict because Ohio has

5

consolidated all product liability claims, regardless of the theory of relief, under the Ohio Products Liability Act, Ohio Rev. Code Ann. § 2307.71-2307.80. See Delahunt v. Cytodyne Techs., 241 F. Supp. 2d 827, 842 (S.D. Ohio 2003). In contrast, product liability in New Hampshire is governed by common law, which allows claims under a variety of theories, including strict liability and negligence. See Short v. Amerada Hess Corp., No. 16-cv-204-JL, 2019 WL 1430106, at *15 (D.N.H. Mar. 29, 2019).

Vollmar argues that despite this difference, defendants, who bear the burden to show an actual conflict, have not shown that the application of Ohio law would change the outcome of her claims. The court agrees. As Vollmar notes, the Ohio Products Liability Act "simply codifies various common law causes of action and the legal elements remain nearly identical." Doc. no. 72 at 7-8. In other words, although the Ohio Products Liability Act abrogated common law products liability claims, defendants have not shown that the same claims are unavailable under the Act.[2]

In their memorandum in support of their motion to dismiss and in their reply, defendants note several differences between New Hampshire and Ohio product liability law. For example, they assert that under Ohio law, a plaintiff must plead and prove that a feasible alternative design exists in order to maintain a design defect claim while New Hampshire does not recognize that rule. See doc. no. 68-1 at 4. In their reply, defendants note that Ohio applies a heeding presumption in failure-to-warn claims while the First Circuit declined to apply the presumption

---

[2] Vollmar provides a chart to show that there is no material conflict between New Hampshire and Ohio product liability laws except as to her breach of implied warranties claim. Vollmar does not explain what conflict exists as to that claim, and defendants did not address the conflict as to that claim in their reply. Regardless, for the reasons discussed below, that claim is dismissed as time-barred, and the court need not decide which law would apply to that claim if it were viable.

6

because the New Hampshire Supreme Court has not addressed that question. See Wilson v. Bradlees of New Eng., Inc., 250 F.3d 10, 16 (1st Cir. 2001). Defendants also cite a rule, not recognized in New Hampshire, that requires a plaintiff in Ohio to plead and prove that a feasible alternative design exists in order to maintain a design defect claim.

Although defendants show that differences exist between New Hampshire and Ohio products liability law, they have not shown that these differences would change the outcome of Vollmar's claims.[3] Because defendants have not shown that an actual conflict exists between New Hampshire and Ohio law for purpose of Vollmar's claims in this case, no choice of law is necessary and the court will apply New Hampshire law to the liability portion of Vollmar's claims. See Aftokinito, 2010 WL 3168295, at *3.

II.  Merits of the Claims

Defendants move to dismiss Vollmar's claims on the ground that they are not cognizable under Ohio law. Because New Hampshire law, not Ohio law, governs the claims, defendants' arguments are not relevant.

---

[3] Indeed, defendants have not shown that the heeding presumption would apply in the context of Vollmar's failure-to-warn claim. See, e.g., Adeghe v. Janssen Pharms., Inc., No. 16 Civ. 2235 (LGS), 2017 WL 3741310, at *6 (S.D.N.Y. Aug. 30, 2017) (explaining fact specific nature of heeding presumption). The case that defendants cite, Rheinfrank v. Abbott Labs., Inc., 119 F. Supp. 3d 749 (S.D. Ohio), addresses the heeding presumption in the context of a failure-to-warn claim against a drug manufacturer. Defendants have not shown that Ohio would apply the heeding presumption in the context of a defective medical device case. See, e.g., Lynch v. Olympus Am., Inc., No. 18-cv-00512-NYW, 2019 WL 2372841, at *16 n.7 (D. Col. June 5, 2019) (citing Garside v. Osco Drug, Inc., 976 F.2d 77, 80 (1st Cir. 1992)) (stating that the presumption is common against drug manufacturers but much less so in other contexts).

III. Statute of Limitations

Defendants argue that Vollmar's breach of warranty claims, Counts V and VI, are barred by the applicable statute of limitations. Vollmar contends that the statute of limitations for her breach of warranty claims should be tolled.

The parties agree that New Hampshire's statutes of limitations, as procedural rules of the forum state, apply in this case. See TIG Ins. Co. v. EIFlow Ins. Ltd., No. 14-cv-459-JL, 2015 WL 5714686, at *3 (D.N.H. Sept. 29, 2015) (discussing circumstances under which it is appropriate for this court sitting in diversity to apply New Hampshire's statute of limitations). They further agree that Vollmar's breach of warranty claims are governed by RSA 382-A:2-725.

RSA 382-A:2-725(1) states that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RSA 382-A:2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id.

The discovery rule for future performance does not apply to implied warranties. Kelleher v. Marvin Lumber & Cedar Co., 152 N.H. 813, 853 (2005). In addition, while equitable tolling and the fraudulent concealment rule may extend the limitation period for purposes of a claim of breach of an express warranty, they do not apply to breach of implied warranties claims. Begley v. Windsor Surry Co., Civ. No. 17-cv-317-LM, 2018 WL 1401796, at *8 (D.N.H. Mar. 19, 2018) (relying on Lockheed Martin Corp. v. RFI Supply, Inc., 440 F.3d 549, 556-57 (1st Cir. 2006)).

Defendants assert that Vollmar's breach of warranty claims accrued when the mesh product was implanted in February 2010, which is more than four years before she brought suit in December 2017. Vollmar contends that defendants' warranties extended to future performance of the mesh and, therefore, the accrual date is extended to when the breach of warranty was discovered or should have been discovered. She further contends that she could not have been aware of the defects in the mesh until well after her surgery and no earlier than four years before she filed suit. In their reply, defendants argue that the future performance extension does not apply because no such explicit warranty was made and that the future performance extension does not apply to implied warranty claims.

As stated above, the discovery rule for future performance does not apply to breach of implied warranty claims. Nor does equitable tolling or fraudulent concealment. Therefore, Vollmar's claim for breach of implied warranties, Count VI, accrued on February 19, 2010, the date of her first surgery. Because Vollmar brought this suit more than four years later, Count VI is dismissed as untimely.

The discovery rule for future performance applies to Vollmar's breach of express warranty claim if defendants' express language warranted the performance of the mesh for a future period of time or permanently. Kelleher, 152 N.H. at 828. At this stage of the litigation, the court is limited to the allegations in Vollmar's complaint. Vollmar alleges that defendants warranted that the mesh product was safe and fit for its intended purpose, which was to be surgically implanted into patients. As such, the court may make the reasonable inference that in advertising, marketing, and otherwise promoting C-QUR mesh, defendants expressly warranted the future performance of the mesh product after implant. Therefore, Vollmar's allegations are sufficient to preclude dismissal of the breach of express warranty claim, Count V, as time-barred

at this stage of the litigation.  Defendants' statute-of-limitations defense to this claim is better raised in a properly supported motion for summary judgment.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss (doc. no. 68) is granted as to Vollmar's breach of implied warranties claim (Count VI) and is otherwise denied.

SO ORDERED.

_____
Landya B. McCafferty
United States District Judge

August 20, 2019

cc:  Counsel of Record